IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SANTA TERRESA DILLON,

        Plaintiff,

v.                                      CIVIL ACTION NO.   5:12-cv-09314

UNITED STATES OF AMERICA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

On the 27th day of April, 2015, a bench trial began in the above-styled matter. The Plaintiff rested her case on April 28, 2015, and the United States orally moved for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. It asserted that the Plaintiff had not met her burden of demonstrating any negligence on the part of the United States, acting through United States Postal Service employees. Having heard the Plaintiff's evidence and having reviewed the exhibits presented at trial, the Court finds that the United States' motion should be granted.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Santa T. Dillon alleges that she suffered serious injuries following a fall at the post office in Glen Daniel, West Virginia, on January 27, 2004. She alleges that she slipped on black ice, and that the post office was negligent in failing to salt the area. She first presented her claims in an administrative claim with the Postal Service on January 5, 2006. That claim was ultimately denied on June 25, 2012. She then filed this suit on December 19, 2012. The parties conducted

extensive discovery, and the Court ruled on various discovery-related disputes. The parties also each filed a motion for summary judgment. Finding questions of fact appropriate for resolution at trial, the Court denied both motions. (*See Memorandum Opinion and Order*, Document 147.)

Following the conclusion of the Plaintiff's case, the United States moved for judgment pursuant to Rule 52(c). It asserted that the Plaintiff had not met her burden with respect to negligence, citing the dearth of evidence that the area where she fell was icy. The Court agreed, and informed the parties of the ruling via a telephone conference on April 29, 2015. Having heard the testimony of the witnesses for the Plaintiff, including that of the post office employee present on the day of the incident, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

At the time of her fall in 2004, Ms. Dillon was employed as an assistant manager at a credit union managed by her mother. On the morning of January 27, 2004, she dropped her older son off at elementary school, then stopped at the post office with the intention of dropping her younger son off at daycare and proceeding to work. She arrived at the post office between 8:30 and 9:00 a.m. She did not notice ice. (S. Dillon Tr., at 5::8-13.) Her only recollection of the weather is that it was a cold morning. (*Id.*, at 4::14-17.) She parked at the curb on the street next to the post office entrance, with a step up to the entrance walkway, and entered the building without incident to collect her mail. (*See* Joint Exhibit 5.) When she exited and returned to her car moments later, she fell, hitting her elbow, back, and head on the pavement.

After falling, Ms. Dillon returned to the post office and spoke with Debra Raye, who was the only employee present. Ms. Dillon informed Ms. Raye that she had fallen and stated that she believed it was due to black ice. (D. Raye Tr., at 10:16–11:13.) She declined to fill out an

2

accident report at that time. She then drove to her parents' home and her father took her to the emergency room, where she was treated and released. She also returned to the post office to complete an accident report with Ms. Raye. That evening, she wrote or dictated a statement describing the fall to her mother. (Def.'s Ex. 10.) She also wrote a letter to the Postal Service describing the fall, in which she suggested that she slipped on black ice. (Def.'s Ex. 9.) During cross examination, she repeated that she had not seen any form of ice at any time, and stated that the mention of black ice in the letter was "just probably me trying to remember and trying to figure out what happened." (S. Dillon Tr., at 40::7–14.)

Ms. Raye had arrived at the post office at about 8:00 a.m. She testified that it was warm and sunny. (D. Raye Tr., at 4::5-8.) Employees use a back entrance to the post office, but she went in and out of the front entrance soon after her arrival to raise the flag in front of the building. At that time, the parking lot was dry. At around 8:30, she noticed that the edge of the porch or loading dock in the back looked shiny. (*Id.* at 5::9-14.) Ms. Raye testified that the back porch area is particularly susceptible to ice because it is in a shaded area that never gets sun. (*Id.* at 8::8-9.) She spread salt on the edge of the porch out of concern that there was ice or that ice could form. (*Id.* at 5::17-20.) She did not check the front entrance for ice because it had been dry when she raised the flag only a half hour previously, and she did not notice dampness anywhere other than the back porch. (*Id.* at 6::9-15) (testifying that she put salt down "[j]ust on the porch because everywhere else was dry.")

Soon after Ms. Raye returned inside, Ms. Dillon reported her fall. Ms. Raye went outside to spread salt in front of the building. She inspected the area where Ms. Dillon said she fell. Ms. Raye reported that the asphalt was damp, indicating that there had been some precipitation since

3

she was outside to raise the flag.  (*Id.* at 8::15-23.)  However, she did not see or feel ice at any point.  (*Id.*)  She indicated that she spread salt as a precaution only.  (*Id.*)

The accident report, a letter Ms. Raye wrote to the Postal Inspector, and the letter Ms. Dillon wrote to the Postal Service all referenced black ice.  (Accident Report, Pl.'s Ex. 1; Raye Letter, Pl.'s Ex. 2; Dillon Letter, Def.'s Ex. 9.)  However, Ms. Raye consistently stated that she simply included Ms. Dillon's description of the conditions in the accident report and the letter, but that she did not see or feel ice at any point.  Ms. Dillon, in turn, indicated that she did not see or feel ice at any point, but came up with black ice as an after-the-fact explanation for why she had fallen.  Neither party introduced evidence from the National Weather Service, or any other source, as to the weather conditions on January 27, 2004.

The testimony and the evidence with respect to negligence were fairly clear-cut, with little factual dispute.  Nonetheless, the Court's evaluation of the testimony rests in part on the credibility of the witnesses.   The Court found Ms. Raye to be a credible witness, particularly with respect to her consistent descriptions of direct observations and her conversations with Ms. Dillon.  Both attorneys asked leading questions throughout her examination, without objection, and Ms. Raye was susceptible to being led when asked about her reasoning for taking actions, or similar questions that did not ask for a factual recollection.  Throughout her examination, she appeared very sincere and forthright in her responses, regardless of who was questioning her.

The Court is less confident of the credibility of Ms. Dillon's testimony, however.  Her demeanor on cross examination was defensive and hesitant.  While her injury resulted in alleged memory problems that may partially explain her inability to answer some questions clearly, her memory appeared significantly clearer on direct examination than on cross examination.  In

4

addition, certain evidence calls into question some of her claims. She claims that her injuries caused her to suffer severe headaches and depression and to miss significant work, yet her attendance records reveal only minimal absences, primarily for vacation, for nearly two years after her fall. (Def.'s Ex. 2.) Medical records suggest that she informed her physicians that her then-husband choked her and hit her head in a 2009 incident, yet she now testifies that he only hit her hand. After a 1997 car accident, she wrote a letter to the at-fault driver's insurance company, claiming to have experienced depression and other problems as a result of the accident, yet she testified that she never suffered from depression prior to her 2004 fall. (Def.'s Ex. 4.) In addition, her claim after that accident included significant lost work time, yet she now indicates that the accident was not serious and would not have resulted in missing significant work.

## CONCLUSIONS OF LAW

The United States moved for judgment on the issue of negligence pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. Rule 52(c) provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c); *see also Carter v. Ball*, 33 F.3d 450, 457-58 (4th Cir. 1994). Accordingly, the Court may properly evaluate the Plaintiff's evidence to determine whether she has met her burden of proof with respect to the United States' negligence.

The basic elements of a negligence claim are duty, breach of that duty, causation, and damages. "In order to establish a negligence claim in West Virginia, '[a] plaintiff must prove by

5

a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff.'" *Cline v. 7-Eleven, Inc.*, 2012 WL 5471761 (N.D.W. Va. Nov. 9, 2012) (citing *Neely v. Belk, Inc.,* 668 S.E.2d 189, 197 (W.Va.2008)). In determining whether a duty exists, "[t]he ultimate test…is found in the foreseeability that harm may result." Syl. pt. 3, *Hersh v. E-T Enterprises, Ltd. P'ship*, 752 S.E.2d 336, 338 (W. Va. 2013) (explaining that the test is whether "the ordinary man in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the general nature of that suffered was likely to result").

Businesses and landowners will not be found liable in negligence unless they "breach their duty of reasonable care under the circumstances." *Crum v. Equity Inns, Inc.*, 685 S.E.2d 219, 226 (W.Va. 2009). "[A] plaintiff must show that a defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff" to establish a prima facie case of negligence. *Id.* Further, the Supreme Court of Appeals of West Virginia noted that:

> In determining whether a defendant in a premises liability case met his or her burden of reasonable care under the circumstances to all non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

Syl. pt. 4, *Hersh*, 752 S.E.2d at 338 (citing Syl. pt. 6, *Mallet v. Pickens*, 522 S.E.2d 436 (W. Va. 1999). Questions of negligence are to be decided by the trier of fact even absent a factual dispute, if different conclusions could be drawn from the facts. *See, e.g.*, *Bradley v. Sugarwood, Inc.*, 260 S.E.2d 839, 840 (W. Va. 1979).

In this case, the Glen Daniel post office, and in turn the United States, owed a duty to the Plaintiff and other customers to maintain its premises free of foreseeable harms. That duty would include treating surfaces for ice, when necessary, within a reasonable amount of time.

The Court is unable to find that the post office breached its duty on January 27, 2004, because the Plaintiff has not met her burden of showing that surfaces needed to be treated for ice. Counsel for the Plaintiff argued that Ms. Raye should have salted the customer entrance as soon as she observed the shininess that made her suspect ice could form on the back porch. Ms. Raye testified that it was warm, sunny, and dry when she arrived at the post office at 8:00 a.m. She testified that it was dry on the front of the building when she put up the flag. Even when she noticed the shininess on the back porch, she did not observe a change in the weather, and did not observe dampness or shininess on the pavement outside the rear of the post office. Ms. Dillon, likewise, did not see ice or notice a slick surface when she entered the post office. While Ms. Raye testified that it was damp in the front when she checked the area after Ms. Dillon's fall, she did not see or feel any ice.

The insufficient evidence of ice goes to causation, as well. Even if Ms. Raye, suspecting ice in the rear of the building, breached her duty by failing to promptly salt in the front of the building, there is no evidence that ice caused Ms. Dillon to fall. Ms. Dillon testified that she came up with ice as an after-the-fact explanation for why she fell. It is no more likely that she slipped on ice than that she missed her footing on the curb as she returned to her car, or lost her balance as she reached to open the car door. Therefore, the Court finds that the Plaintiff has not met her burden of proof with respect to negligence and her claim against the United States for damages arising from her fall must be rejected.

**CONCLUSION**

WHEREFORE, following careful consideration and for the reasons stated herein, the Court **ORDERS** that the United States' oral motion for judgment pursuant to Rule 52(c) be **GRANTED.** The Court further **ORDERS** that judgment be entered in favor of the Defendant United States in this matter.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

      ENTER:    May 7, 2015

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA